# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANA HAYDEN and DAN HAYDEN, )
individually and husband and wife, )    Civil Action No. 12-0390
                                     )
                   Plaintiffs, )    Judge Mark R. Hornak
                                       )
v. )
                                         )
WESTFIELD INSURANCE COMPANY, )
                                         )
                 Defendant. )
                                         )
                                         )

## OPINION

**Mark R. Hornak, United States District Judge**

       This saga began in the wake of a March 23, 2011 weather event that Mr. and Mrs. Hayden claim caused damage to their Westmoreland County home. The Haydens allege that Westfield Insurance Company only paid part of the monies due to them under the parties' homeowner's insurance policy. Mr. and Mrs. Hayden filed suit in state court, alleging breach of contract, bad faith, and claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law. Westfield then removed the case to federal court.

       Before the Court are Plaintiffs' Motion to Dismiss, ECF No. 44, pursuant to Federal Rule of Civil Procedure 41(a)(2), and Defendant's Motion for Summary Judgment, ECF No. 26, pursuant to Federal Rule of Civil Procedure 56. The Court has considered both Motions and the responsive pleadings, and for the reasons that follow, Plaintiffs' Motion to Dismiss is denied with prejudice, and Defendant's Motion for Summary Judgment is granted in its entirety.

## I. BACKGROUND

### a. Factual History

The relevant material facts of this case are straightforward and undisputed. Dana and Dan Hayden purchased a homeowner's insurance policy from Westfield Insurance Company ("Westfield") with an inception date of May 12, 2009. Def.'s Concise Statement of Material Facts ¶ 2, ECF No. 28 (hereinafter "Def.'s Stat. Facts"). This policy provided benefits for property damage to the Haydens' Westmoreland County home caused by weather events. *Id.* On March 23, 2011, a hail and windstorm event occurred in Westmoreland County. *Id.* at ¶ 8. Six months later, on September 13, 2011, Mrs. Hayden called the Duncan Insurance Agency, providing the first notice to Westfield of any claim relating to this storm.[1] *Id.* at ¶ 11.

Prior to when any Westfield representative inspected the Haydens' home for damage, the Haydens gutted the third floor/attic/master bedroom, and second floor bathroom and bedrooms. *Id.* at ¶ 12. Westfield's Claims Leader, John Supp, spoke to the Haydens on September 15, 2011, and arranged to have an independent contractor, Disaster Restoration Services ("DRS"), inspect the Hayden home. *Id.* at ¶ 14; *see also* John Supp Dep. 4:25-5:1, Dec. 4, 2012, ECF No. 29-5. Westfield adjuster Lisa Miller was assigned to the claim and first visited the Hayden home on September 29, 2011. Def.'s Stat. Facts ¶ 14. Following her visit to the property, Ms. Miller arranged for an engineer to conduct an inspection. *Id.* at ¶ 15. Jerome Paulick of Rudick Engineering visited the Hayden home on October 13, 2011, and then issued his October 21, 2011 report. *Id.*

On October 24, 2011, Westfield issued a $741.63 payment (after accounting for the Haydens' $1,000 deductible), concluding Plaintiffs' claim for hail damage and declining any

---

[1] Duncan Insurance Group, Inc. is the insurance agency in this matter, and Westfield Insurance Company is the company providing coverage. *See* Def.'s App. to Concise Statement of Material Facts, Attach. 1.

further payment. *Id.* at ¶ 16. Westfield determined that the Haydens' claim was more properly considered as two separate claims, one for hail damage and one for water damage to the interior of the home. *Id.* at ¶ 17. On October 22, 2011, the Haydens hired a public adjuster through whom the Haydens separately retained an engineer, Edward Patton. *Id.* at ¶ 19. Mr. Patton visited the Hayden home on November 11, 2011, spent less than an hour at the site, and did not take any photographs or go up on the roof. *Id.* Thereafter, Mr. Patton issued his report dated December 9, 2011. *Id.*

During the course of the parties' litigation before this Court, Westfield sent a second engineer, Richard Herzog of Haag Engineering, to inspect the Hayden home in furtherance of Westfield's investigation. *Id.* at ¶ 24. On February 12, 2013, Mr. Herzog inspected both the roof and the interior of the house, and subsequently issued his report dated March 7, 2013.

### b. **Procedural History**

On March 1, 2012, Plaintiffs filed suit against Westfield in the Court of Common Pleas of Westmoreland County, asserting claims of breach of contract, bad faith, and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. Notice of Removal ¶ 2, ECF No. 1. Westfield removed the case to this Court on diversity grounds. *Id.* Discovery has closed, and both Plaintiffs' Rule 41(a)(2) Motion to Dismiss and Defendant's Motion for Summary Judgment are ripe for disposition.

### II.    **DISCUSSION**

### a. **PLAINTIFFS' MOTION TO DISMISS**

Voluntary dismissals are governed by Federal Rule of Civil Procedure 41. Under Rule 41(a)(1), "the plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment;

or (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41. If the opposing party has already filed a motion for summary judgment, Rule 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). That provision applies here.

The grant or denial of a motion for voluntary dismissal under Rule 41(a)(2) lies within the sound discretion of the district court. *Dodge-Regupol, Inc. v. RB Rubber Products, Inc.*, 585 F. Supp. 2d 645, 652 (M.D. Pa. 2008) (internal citation omitted); *see also Citizens Sav. Ass'n v. Franciscus*, 120 F.R.D. 22, 24 (M.D. Pa. 1988) (citing *Ferguson v. Eakle*, 492 F.2d 26, 28 (3d Cir. 1974)). In general, a voluntary dismissal should be allowed unless the defendant will suffer some plain legal prejudice. *Citizens Sav. Ass'n*, 120 F.R.D. at 24.

In ruling on a Rule 41(a)(2) motion to dismiss, a court must "weigh the prejudice to the defendant, both in terms of legal prejudice and litigation expense." *Schandelmeier*, 143 F.R.D. 102, 102 (W.D. Pa. 1992). Relevant factors in this analysis include: (1) the excessive and duplicative expense of a second litigation; (2) the effort and expense incurred by the defendant in preparing for trial; (3) the extent to which the current suit has progressed; (4) the plaintiff's diligence in bringing the motion to dismiss and explanation therefore; and (5) the pendency of a dispositive motion by the non-moving party. *Id.*; *Dodge-Regupol*, 585 F. Supp. 2d at 652.

The Third Circuit has held that "Rule 41 motions 'should be allowed unless defendant will suffer some prejudice other than the mere prospect of a second lawsuit.'" *See In re Paoli R.R. Yard P.C.B. Litig. v. Monsanto, et. al.*, 916 F.2d 829, 863 (3d Cir. 1990) (quoting 5 J. Moore, *Moore's Federal Practice* ¶ 41.05[1], at 41–62 (1988)). "The purpose of the grant of discretion under Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Dodge-Regupol*, 585 F.

Supp. 2d at 652 (quoting Charles A. Wright & Arthur R. Miller, 9 Fed. Prac. & Proc. Civ.2d § 2364 n. 19) (internal quotations omitted).

Here, the Court's review of the Hayden-Westfield dispute through the lens of the above-enumerated factors weighs heavily in favor of denying Plaintiffs' Rule 41(a)(2) Motion. Westfield removed Plaintiffs' suit to the Western District of Pennsylvania in March of 2012, and this case has progressed through vigorous litigation and motions practice before this Court for over a year and a half. Plaintiffs' suit has progressed from Westfield's now-moot Motion to Dismiss and Motion for a More Definite Statement, ECF No. 6; through Plaintiffs' Amended Complaint, ECF No. 9; to Westfield's Answer to Plaintiffs' Amended Complaint, ECF No. 12; the completion of discovery in December of 2012; this Court's February 13, 2013 Order denying Plaintiffs' Motion to Add Lisa Brown and Duncan Insurance Agency as Additional Defendants; this Court's Order granting Defendant's Motion to Compel Discovery, ECF No. 25 (with which there is no indication that Plaintiffs have yet complied); this Court's July 11, 2013 Order denying Plaintiffs' Motions for Joinder of Additional Defendant [DRS], ECF No. 34, and for Leave to File Second Amended Complaint, ECF No. 36; to Westfield's currently pending Motion for Summary Judgment, ECF No. 26, which is ripe for disposition.[2] Allowing Plaintiffs to now press the eject button and dismiss their motion at this late juncture would markedly prejudice Westfield, "both in terms of legal prejudice and litigation expense." *See Schandelmeier*, 143 F.R.D. at 102.

Looking beyond the progression of the dispute before this Court, Plaintiffs' terse argument for their Rule 41(a)(2) motion is decidedly unconvincing. Plaintiffs profess that they have "chosen to heed the Court's advice and file[] a new lawsuit in the Court of Common Pleas

---

[2]  As Justice Kagan has noted in another context, "if you need to take a deep breath after all that, you are not alone." *Kloeckner v. Solis*, 133 S. Ct. 596, 605 (2012). Considered together, this daisy-chain of Plaintiffs' Motions appears to have had a singular goal – to get out of federal court by any means possible.

5

of Allegheny County against Westfield Insurance and Disaster Restoration Services." Pls.' Mot. to Dismiss, ECF No. 43 at 3. The main problem for the Haydens is that this Court gave no such advice. The Haydens misrepresent the Court's July 11, 2013 Order in which this Court found that Plaintiffs' attempt to join DRS as a Defendant for the damage it allegedly caused to Plaintiffs' roof in 2013 did not arise from a common nucleus of operative fact with the parties' coverage dispute. *See* Order dated Jul. 11, 2013 (text-only entry). Rather, those *DRS* claims "appear[ed] to be claims that c[ould] be easily and timely asserted in state court, and come well after the close of discovery and the filing of dispositive motions in this case." *Id.*

Contrary to this Court's non-"advice," it is evident on the face of the Complaint recently filed by Plaintiffs in the Allegheny County Court of Common Pleas that Plaintiffs have simply copied Counts I and II from their Amended Complaint before this Court relating to the 2011 storm, and added those same unrelated allegations pertaining to DRS's allegedly defective roof underlayment installment in 2013. Pls.' Mot. to Dismiss, Ex. 2; *compare id.*, *with* Pls.' First Am. Compl., ECF No. 9.

In a valiant attempt to avoid federal jurisdiction, the Haydens further assert that because Westfield "cites this pending federal court lawsuit as one of their main defenses [in Plaintiffs' new Allegheny County suit,] . . . Plaintiffs believe this matter may be more easily adjudicated in the state courts with both Defendants present to defend the suit." Pls.' Mot. to Dismiss at 3. This assertion, when placed in context with the progression of the parties' federal court litigation, points to nothing more than improper forum-shopping. "It is inappropriate for a plaintiff to use voluntary dismissal as an avenue for seeking a more favorable forum." *Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1214 (8th Cir. 2011) (citing *Cahalan v. Rohan*, 423 F.3d 815, 818 (8th Cir. 2005) ("A party may not dismiss simply to . . . seek a more favorable forum.")). Plaintiffs'

case began and continues to hinge on whether the *March 2011* weather event caused interior damage to Plaintiffs' home. After Westfield removed the case to federal court, Plaintiffs filed a Motion for Joinder of Additional Defendant in an attempt to add the Pennsylvania corporation DRS to the suit, claiming that DRS was responsible for damaging Plaintiffs' roof in *February of 2013. See* Pls.' Mot. for Joinder of Additional Def., ECF No. 34. This Court denied Plaintiffs' Motion, which incidentally (and likely *not* coincidentally) would have destroyed diversity for jurisdictional purposes, observing that Plaintiffs were attempting to add DRS well after the close of discovery despite Plaintiffs' awareness of the events involving DRS for quite some time. *See* Order dated Jul. 11, 2013 (text-only entry).

Now, Plaintiffs have filed suit in Allegheny County against both Westfield and DRS, combining those claims against Westfield relating to the 2011 storm coverage dispute with additional claims against Westfield and DRS relating to DRS's allegedly defective roof underlayment installment in 2013. Pls.' Mot. to Dismiss, Ex. 2; *compare id.*, *with* Pls.' First Am. Compl. Plaintiffs' plea that circumstances "require the present federal lawsuit to be dismissed in order to properly pursue those claims in a unified manner in state court" simply evidences a backdoor attempt to shop for what they think is a more favorable forum in state court after extraordinary, extensive, and from their perspective, unavailing motions practice in this Court. For all of these reasons, Plaintiffs' Rule 41(a)(2) Motion to Dismiss is denied.

### b. **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

#### 1. **Standard of Review**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties must support their position by "citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue" (internal quotation marks omitted)). "In considering a motion for summary judgment, a court must draw all reasonable inferences from the underlying facts in the light most favorable to the non-moving party." *Emerson Radio Corp. v. Orion Sales, Inc.,* 253 F.3d 159, 162 (3d Cir. 2001).

More specifically, "the moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the nonmoving party must set forth *'specific facts showing that there is a genuine issue for trial'* or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257 (1986).

In considering a summary judgment motion, this Court is not confined to the cited record materials and may consider all materials in the record. Fed. R. Civ. P. 56(c)(3). Moreover,

> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: ... (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it.

Fed. R. Civ. Pro. 56(e)(2–3). Pursuant to this Court's Local Rules, "[a]lleged material facts set

forth in the moving party's Concise Statement of Material Facts . . . which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment, be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." W.D. Pa. Local Civ. R. 56(E).

Here, Plaintiffs concede in their Brief in Opposition to Defendant's Motion for Summary Judgment that "the[ir] claims under Unfair Claims Practices Act should be dismissed." Pls.' Br. in Opp'n to Def.'s Mot. for Summ. J. at 8. Importantly, Plaintiffs' failure to file a Concise Statement of Material Facts in Opposition to Defendant renders Defendant's Concise Statement of Material Facts admitted in its entirety. *See* Fed. R. Civ. P. 56(e)(2); W.D. Pa. Local Civ. R. 56(E). Therefore, this Court will review Defendant's Motion for Summary Judgment through the lens of Defendant's Concise Statement of Material Facts, and will grant Defendant's Motion for Summary Judgment at the outset as to Count III of Plaintiffs' First Amended Complaint, leaving Plaintiffs' breach of contract (Count I) and bad faith claims (Count II) for this Court's more extensive summary judgment analysis.

## 2. Breach of Contract Claim

Under Pennsylvania law, an insurance contract is governed by the law of the state in which it was created. *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 164 (3d Cir. 2011). The insureds are Pennsylvania residents, the loss occurred in Pennsylvania, and the policy was delivered in Pennsylvania. The Court will apply Pennsylvania law to resolve this dispute.

To succeed on a claim for breach of contract, Plaintiffs must prove: "'(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). It is well settled

that:

> in insurance coverage disputes an insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage, but if the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does.

*State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009); *see also*

*Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

Here, the parties do not dispute the existence of an insurance contract. Instead, the parties dispute whether Westfield breached the contract by not paying for all of the damage to the Haydens' home allegedly caused by the March 2011 storm. Westfield concedes that the storm "would have been a covered event under the Westfield policy *to the extent that the storm actually caused damage to the home*." Def.'s Br. Summ. J. at 4, ECF No. 27 (emphasis added) ("hereinafter Def.'s Br. Summ. J."); *see also* ECF No. 33 at 5. However, Westfield avers that the breach of contract claim must fail because Westfield's investigation "fairly and reasonably established that this storm did not damage the Hayden home." Def.'s Br. Summ. J. at 4. Westfield maintains that Mr. Patton's report and deposition testimony are inconclusive at best and legally insufficient to establish a genuine issue of material fact on causation necessary to establish coverage under the Westfield policy. *Id.* at 5.

Plaintiffs' response to Westfield's Motion for Summary Judgment on Plaintiffs' breach of contract claim contains no citations to any (1) case law, (2) facts, (3) deposition testimony, or (4) insurance policy provisions to defeat Westfield's Motion. Plaintiffs rely on a lone citation to Mr. Patton's unsworn expert report to support their position that "Plaintiff's expert has concluded that the water entered the home from various areas of the roof." Pls.' Br. in Opp'n at 5. Indeed, Plaintiffs repeatedly (and loudly) try to drive home the point that their roof is

damaged, and conclude that "[w]hether the roof is damaged is a question of fact that must be decided by a fact finder." *Id.* at 5. However, Plaintiffs' conclusion completely misstates the issue. The question of *what caused* the damage to the Hayden home is at the core of the parties' contractual dispute. In other words, as Westfield argues, "the issue at hand is whether the Hayden roof was damaged by the storm event of March 23, 2011, the prior incident in February of 2010, or other facts such as wear, tear, and deterioration." *Id.* at 6.

Furthermore, the Third Circuit has held that an unsworn expert report "is not competent to be considered on a motion for summary judgment." *Fowle v. C & C Cola,* 868 F.2d 59, 67 (3d Cir.1989) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 n. 17 (1970)); *see also* Fed. R. Civ. P. 56(c)(1)(A) (a party asserting that a fact is genuinely disputed must support that assertion with an affidavit or declaration); *Jackson v. Egyptian Navigation Co.,* 222 F. Supp. 2d 700, 709 (E.D. Pa. 2002) (finding that an unsworn expert report cannot be considered as evidence for a motion for summary judgment). Given that the expert report Plaintiffs submitted was not supported by an affidavit or declaration, the report is "not competent to be considered" in support of Plaintiffs' response to Defendant's Motion for Summary Judgment.[3]

Even if Mr. Patton's report were sworn to and/or otherwise admissible, it nevertheless would fail to set forth sufficient evidence of any genuine issue of material fact from which a reasonable jury could find that Westfield breached the parties' insurance contract while handling the interior damage claim. As Westfield correctly argues, Mr. Patton's report is inconclusive on the issue of whether the March 2011 storm caused interior damage to Plaintiffs' home, a fatal

---

[3] This Court recognizes that Federal Rule of Civil Procedure 56 was amended effective December 2010 to provide that a declaration, that is an unsworn statement subscribed to under penalty of perjury, can substitute for an affidavit. *See* Fed. R. Civ. P. 56 Advisory Committee Note; *see also Ray v. Pinnacle Health Hosps., Inc.,* 416 Fed. Appx. 157, 164 n. 8 (3d Cir. 2010) (noting that "unsworn declarations may substitute for sworn affidavits where they are made under penalty of perjury and otherwise comply with the requirements of 28 U.S.C. § 1746"). Because the expert report submitted by Plaintiffs in this case was not "declared" under penalty of perjury, *see* 28 U.S.C. § 1746, this recent amendment to Federal Rule of Civil Procedure 56 does not save Plaintiffs' bacon.

flaw that is highlighted in Mr. Patton's own deposition testimony and in the remaining record before this Court. In his report, Mr. Patton wrote that "during our site visit on November 11, 2011, it was noted that water infiltration had occurred inside the home." Pls.' Br. in Opp'n, Ex.10 at 3. Further, "it was evident by debris from adjacent homes and photo's [sic] taken from the owner of his own roof that the [weather] event was significant enough that the size and velocity of the hail pierced much of the valley flashings permitting water infiltration to occur." *Id.*

However, Mr. Patton directly contradicted these observations at his own sworn deposition when he testified that "I could not tell the exact source of the infiltration," Edward Patton Dep. 67:5-6, Feb. 14, 2013, and "did not see any hail-related damage to any of the soft metals or flashing on the Hayden roof in any of the photographs" he had before him, *id.* at 67:7-9. Notably, Mr. Patton testified that he "didn't get up on the roof", *id.* at 39:7, and that he "went outside and walked as far as I could to see as much of the roofing elements as I could . . . [f]rom ground level," *id.* at 38:14-20. "It was getting dark as I recall . . . and I did not take any pictures." *Id.* at 35:5-7. When Mr. Patton inspected the Hayden home to review the roof structure, "[t]he tarping was on the house at the time, which again, covered most of [the roof]." *Id.* at 38:15-39:5. Finally, Mr. Patton testified that he could "*only conclude that because of the presence of water* that that water infiltration is associated with damage and subsequent rain, potentially rain infiltration since the March event." *Id.* at 61:2-6 (emphasis added). Remarkably, the only information Mr. Patton had as to the majority of the roof that remained covered by tarp was either given to Mr. Patton orally by the Haydens or in the pictures they showed him. *Id.* at 40:13-17. "They just showed me pictures . . . They did say, hey, we think we have hail damage." *Id.* at 40:17-19.

Critically, Mr. Patton did not receive and consider any information about the prior snow and ice-related damage to the Hayden home in *February 2010*, and the fact that the two missing shingles on the Hayden's roof dated from that ice-damming incident. *Id.* at 69:22-70:10. Mr. Patton did observe during his *November 2011* site visit that "several pieces of decking plank were broken" and that "cracked decking is most likely associated with the decking [being] overloaded." *Id.* at 50:9-25.

Indeed, as Plaintiffs admitted, "[i]n or around February of 2010, the Haydens made an insurance claim with Westfield for ice damming *and related interior water damage*" at their residence. Def.'s Stat. Facts ¶ 4 (emphasis added). "[A]fter adjustment of that claim, Westfield paid the Haydens an amount of $6,095.60 for damage caused by ice-damming and related interior water damage." *Id.* at ¶ 5. However, "[f]ollowing the February[] 2010[] claim to Westfield, and up until the present time, damage to the Hayden roof from the February[] 2010[] claim was not repaired." *Id.* at ¶ 7.

Not only is Mr. Patton's report hopelessly vague and purely conclusory, but the report reflects no knowledge on Mr. Patton's part that the Haydens failed to repair their roof after their prior 2010 claim for interior water damage, and reflects no attempt by Mr. Patton to consider other damage-causing factors such as wear, tear, or deterioration. *See* Edward Patton Dep. 56:20-57:10. Mr. Patton's assertion that "he could only conclude that because of the presence of water . . . that [the] water infiltration is associated with damage . . . potentially rain infiltration since the March event" reveals an analysis amounting to little more than "the attic had water" and "there was a big storm." Such an *ipse dixit* does not create a genuine issue as to the sole material fact: causation. Mr. Patton's expert report - even if it were actually competent by rule to be considered at summary judgment – fails to establish a genuine issue of material fact on

13

causation from which a reasonable jury could return a verdict in Plaintiffs' favor.

Plaintiffs' remaining attempts to overcome summary judgment by asserting that Westfield breached the parties' contract (1) by failing to issue a prompt denial on Plaintiffs' interior damage claim; (2) by engaging DRS who allegedly damaged Plaintiffs' roof while installing an underlayment in 2013; and (3) by refusing to pay for Plaintiffs' roof tarp due to its price, are wholly unsupported by any relevant citation to pertinent policy language, case law or statutory law, and are decidedly contrary to the record before this Court.

First, Plaintiffs fail to cite to any applicable law requiring a written denial of Plaintiffs' interior damage claim at this stage of Westfield's investigation. By virtue of Plaintiffs' failure to respond to Defendant's Concise Statement of Material Facts, Plaintiffs admit that before any Westfield representative visited Plaintiffs' house to inspect for damage claimed as a result of the March 2011 storm, "the third floor/attic/master bedroom as well as the bathroom and bedrooms of the second floor of the residence . . . were gutted." Def.'s Stat. Facts at ¶ 12. Plaintiffs further admit that while they "repeatedly claimed that they had obtained several estimates from roofing contractors, . . . and these items were repeatedly requested by Westfield during the adjustment of the claim," as well as during discovery, no such estimates or records were provided, "even though by Court Order dated February 13, 2013, the Haydens were required to produce such information." *Id.* at ¶ 13. Plaintiffs fail to establish any record basis for a jury to conclude that Westfield's alleged delay in investigating Plaintiffs' interior damage claim was not appropriate under these circumstances.

Second, regarding Plaintiffs' DRS claim, Plaintiffs' Amended Complaint and Westfield's ensuing Motion for Summary Judgment involve the issue of whether the 2011 storm caused damage to both to Plaintiffs' roof and home interior due to water infiltration. *See* Pls.' Am.

14

Compl.; Def.'s Br. Summ. J. at 1. As Westfield argues, Plaintiffs stray far afield from the allegations of Count I of their Amended Complaint by claiming that Westfield also breached the parties' contract when its contractor allegedly destroyed Plaintiffs' roof *in 2013*, a matter at best only tangentially related to the parties' initial coverage dispute. Any tenuous claim by Plaintiffs that their breach of contract claim stemming from the *2011* storm somehow now encompasses an additional event *in 2013* fails on its face and in no way establishes a genuine issue of material fact on Plaintiffs' denial of coverage claim. *See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109 n.9 (3d Cir. 2002) (noting that a plaintiff "should not be able effectively to amend a complaint through any document short of an amended pleading").[4]

Third, Plaintiffs also contradict their own "Exhibit 1" in their Brief in Opposition and the remaining record before this Court by setting forth a novel argument that Westfield did not pay for the tarp because the tarp was too expensive. In Exhibit 1, Westfield indicated in writing to the Haydens that its "review and analysis of the Hayden's roof" as of February 17, 2012, *"does not support a covered claim that would support coverage for expenses to tarp the roof. We will provide our decision regarding the tarp as it relates to the interior water damage upon completion of our investigation."* Pls.' Br. in Opp'n, Ex. 1 at 2 (emphasis added). While Mr. Hayden did testify at his deposition that Ms. Miller had indicated his tarp price quote was high, there is no record evidence to suggest that Westfield refused to pay for the tarp because it was too pricey. Dan Hayden Dep. 27:17-18, Dec. 4, 2012, ECF No. 29-7; *see also* Susan Miller Dep. 71:15-22,

---

[4] In *Sola v. Lafayette Coll.*, 804 F.2d 40, 45 (3d Cir. 1986), the Third Circuit did conclude that "[t]he district court should have considered the affirmative action claims raised in the brief [in opposition to summary judgment] and at oral argument as a motion to amend the complaint." *Id.* (internal citation omitted). However, *Sola* is inapplicable under these circumstances because on July 11, 2013, this Court expressly denied Plaintiffs' attempt to add the February 2013 claims to this case via their Motion for Leave to File Second Amended Complaint, ECF No. 36.

Dec. 4, 2012, ECF No. 29-4 ("When a claim first comes in and someone indicates that I must have wind damage to my roof because I have water coming into my ceiling, . . . we remind the insured that they do have the responsibility to mitigate their damage. . . . If the leak is determined to not be the result of a covered cause of loss, then unfortunately, we do not pay for the tarp.").

There is not sufficient record evidence of any genuine issue of material fact as to causation from which a reasonable jury could find that Westfield breached the parties' homeowner's insurance contract. Plaintiffs have simply failed to set forth "specific facts showing that there is a genuine issue for trial." *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Therefore, Defendant's Motion for Summary Judgment on Plaintiffs' breach of contract claim is granted.

### 3. **Statutory Bad Faith Claim**

The Pennsylvania bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371, provides in its entirety:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>> (2) Award punitive damages against the insurer.
>> (3) Assess court costs and attorney fees against the insurer.

To succeed on a bad faith claim, a plaintiff-insured must prove by clear and convincing evidence: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Nw. Mut. Life Ins. Co. v. Babayan,* 430 F.3d 121, 137 (3d Cir. 2005); *Terletsky v. Prudential Prop. & Cas. Ins. Co.,* 649 A.2d 680, 688 (Pa. Super. Ct. 1994). "Thus, an insurer may defeat a claim of bad faith by showing that it had a reasonable basis for its

actions." *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011) (citing *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d Cir.1995)). Indeed, "the essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits." *UPMC Health Sys. V. Metropolitan Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004) (internal citation omitted).

Although the term "bad faith" is not defined in the statute, courts have subsequently determined that a variety of carrier actions can constitute bad faith, including "a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured." *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir. 1999); *see also Terletsky,* 649 A.2d at 688. Bad faith can also include an unreasonable delay in handling claims. *See Willow Inn, Inc. v. Public Serv. Mut. Ins. Co.*, 399 F.3d 224, 235 (3d Cir. 2005).

In order for an insured to recover for bad faith stemming from delay, the insured must demonstrate that "the delay is attributable to the defendant, that the defendant had no reasonable basis for the actions it undertook which resulted in the delay, and that the defendant knew or recklessly disregarded the fact that it had no reasonable basis to deny payment." *Thomer v. Allstate Ins. Co.,* 790 F. Supp. 2d 360, 370 (E.D. Pa. 2011) (quoting *Wiedinmyer v. Harleysville Mut. Ins. Co.*, 1999 WL 1324202, at *215 (Pa. Com. Pl. Aug. 5, 1999) (citing generally *Quaciari v. Allstate Ins. Co.,* 998 F. Supp. 578 (E.D. Pa.1998))).

Courts have rejected bad faith claims based upon an alleged delay in payment when the delay was due to a continuing investigation of the claim or to simple negligence. *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588-89 (E.D. Pa. 1999); *see also Grove v. Aetna Cas. & Surety Co.*, 855 F. Supp. 113, 115-16 (W.D. Pa. 1993) (observing that repeated requests for more

information resulting in delay of final determination may or may not constitute bad faith denial of benefits).

With regard to a plaintiff-insured's evidentiary burden to succeed at summary judgment on a bad faith claim, "[t]he 'clear and convincing' standard requires that the plaintiff show that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *J.C. Penney Life Ins. Co. v. Pilosi,* 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Bostick v. ITT Hartford Group, Inc.,* 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999)) (quotations omitted). "Thus, the plaintiff's burden in opposing a summary judgment motion is commensurately high in light of the substantive evidentiary burden at trial." *Pilosi,* 393 F.3d at 367 (citing *Kosierowski,* 51 F. Supp. 2d at 588); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ("We conclude that the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case. This is true at both the directed verdict and summary judgment stages.").

Our sister courts have concluded that "[r]esolution of a coverage claim on the merits in favor of the insurer requires dismissal of a bad faith claim premised on the denial of coverage because under the circumstances the insurer necessarily has a reasonable basis for denying benefits." *Gold v. State Farm Fire & Cas. Co.,* 880 F. Supp. 2d 587, 597 (E.D. Pa. 2012). "However, if bad faith is asserted as to conduct beyond a denial of coverage, the bad faith claim is actionable as to that conduct regardless of whether the contract claim survives." *Id.* at 598. This is because section 8371 claims generally exist apart from the underlying contract claims. *See Polselli v. Nationwide Mut. Fire Ins. Co.,* 126 F.3d 524, 529 (3d Cir. 1997) (recognizing that 42 Pa. Cons. Stat. Ann. § 8371 provides an "independent cause of action to an insured that is not

dependent upon success on the merits, or trial at all, of the contract claim") (quoting *Nealy v. State Farm Mut. Auto. Ins. Co.,* 695 A.2d 790, 792 (Pa. Super. Ct. 1997)); *Fabrikant v. State Farm Fire & Cas. Co.,* No. 3:11–CV–438, 2012 WL 1677293, at *10 (M.D. Pa. May 14, 2012) (granting summary judgment on breach of contract claim but also analyzing bad faith claim). Therefore, while this Court grants summary judgment in favor of Westfield on Plaintiffs' breach of contract claim, this Court will nonetheless address Plaintiffs' bad faith claims premised on Westfield's alleged investigative delay.

Returning to a plaintiff-insured's burden of proof for a bad faith claim, the first prong of the *Babayan* bad-faith test is objective, "so if a reasonable basis exists for an insurer's decision, even if the insurer did not rely on that reason, there cannot" as a matter of law be bad faith. *Wedemeyer v. U.S. Life Ins. Co. in City of New York*, No. 05–6263, 2007 WL 710290, at *9 (E.D. Pa. Mar. 6, 2007); *see also Quaciari*, 998 F. Supp. at 581 n. 3 (a defendant may prevail at the summary judgment stage by "affirmatively demonstrating a reasonable basis for its actions"). In fact, the insurance company "need not show that the process used to reach its conclusion was flawless or that its investigatory methods eliminated possibilities at odds with its conclusion. Rather, an insurance company simply must show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action." *Mann v. UNUM Life Ins. Co. of Am.,* No. 02–1346, 2003 WL 22917545, at *7 (E.D. Pa. Nov. 25, 2003).

The gravamen of Westfield's summary judgment argument is that Plaintiffs lack sufficient evidence to support their allegation that Westfield acted in bad faith by failing to promptly investigate Plaintiffs' interior damage claim because Westfield had a reasonable basis for its delay. Def.'s Br. Summ. J. at 12–14. Plaintiffs unsuccessfully attempt to prop up their bad faith argument with assertions that Westfield acted in bad faith by allegedly "fail[ing] to

send anyone to determine the extent of damage to Plaintiffs' home until February 12, 2013[, and failing to promptly deny Plaintiffs' claim for interior damage to their home] …[which] is an unreasonable delay [for] no valid reason." Pls.' Br. in Opp'n at 7-8. Not only are these factual assertions unsupported by any citation to the record but they also directly contradict it.

The first of Plaintiffs' own delays permeating this case occurred on September 13, 2011, when Ms. Hayden first notified Westfield of the Haydens' claim relating to the March 23, 2011 weather event of nearly six months prior. Def.'s Stat. Facts ¶ 11. Contrary to Plaintiffs' contention, on *September 29, 2011* Westfield sent a representative to determine the extent of damage to Plaintiffs' home. *Id.* at ¶¶ 14-15; *see also* Pls.' Compl. at ¶ 22-23. Westfield adjuster Ms. Miller was assigned to Plaintiffs' claim, first visited Plaintiffs' property on September 29, 2011, and arranged for an engineer to conduct an inspection. *Id.* On October 13, 2011, Jerome Paulick of Rudick Engineering visited Plaintiffs' home and issued his report dated October 21, 2011. Def.'s Stat. Facts ¶ 15.

Importantly, prior to when any Westfield representative visited Plaintiffs' property, the Haydens completely gutted the third floor/attic/master bedroom and the bathroom and bedrooms of the second floor of their residence. *Id.* at ¶ 12. Plaintiff Mr. Hayden did testify at his deposition that he had pre-demolition photographs of visible water damage to the interior of Plaintiffs' home but also testified that he was unable to produce them. Dan Hayden Dep. 10:11-21. Plaintiffs' dilatory tactics then continued. Mr. Hayden testified that he had a receipt and pictures from the work done on Plaintiffs' house to repair the gutter, soffit, and fascia after Plaintiffs' February 2010 ice-damming loss, which damaged Plaintiffs' home to such a degree that "there was a hole in the roof with a towel hanging from it and some rippling damage to the third-floor walls." *Id.* at 31:22-33:6.

Accordingly, Westfield in its Rule 34 Request for Production of Documents asked for, inter alia, "any and all documentation" that Plaintiffs' home was repaired after their February 2010 claim for ice damming, "including but not limited to any estimates, bills, invoices or cancelled checks reflecting such work"; and "any and all photographs" Plaintiffs took prior to their gutting of the second and third floors of their home." Def.'s Req. for Produc., ECF No. 29-2 at 1.

Despite this Court's February 13, 2013 Order, ECF No. 25, requiring Plaintiffs to "provide full, complete, and responsive answers to Defendant's Requests for Production of Documents, Requests for Admissions, and Interrogatories within ten (10) days," there is no indication in the record that Plaintiffs *ever* provided Westfield with any of its requested pre-gutting photos or receipts, bills, or invoices for repairs Plaintiffs might have done after their February 2010 interior damage claim. Westfield maintains that "the claim was held open pending the receipt of these and other documents referenced by the Haydens." Def.'s Br. Summ. J. at 10. Ultimately, as Plaintiffs admitted via their failure to respond to Defendant's Concise Statement of Material Facts, "following the February[] 2010[] claim to Westfield, and up until the present time, damage to the Hayden roof from the February[] 2010[] claim was not repaired. An area is still visible showing two missing shingles on the roof." Def.'s Stat. Facts ¶ 7.

Plaintiffs' response to Westfield's Motion for Summary Judgment is devoid of any record-supported assertion of fact that would render an investigative delay unreasonable under these circumstances, where both prior to and during this suit Plaintiffs have failed to provide requested documentation to Westfield after waiting nearly six (6) months to report their claim in the first place. *See Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 307–08 (3d Cir. 1995) (an insurer may defeat a claim of bad faith by showing that it had a reasonable basis for its

actions); *Babayan*, 430 F.3d at 138 ("Pennsylvania law provides that it is not bad faith to conduct a thorough investigation into a questionable claim.").

While Plaintiffs argue that Westfield could have completed its investigation with greater speed, the simple fact that Westfield failed to do so under these circumstances does not amount to clear and convincing evidence that is so "direct, weighty and convincing as to enable a clear conviction, without hesitation," by which a jury could conclude that Westfield acted in bad faith. *See Pilosi*, 393 F.3d at 367 (quoting *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 587 (E.D.Pa.1999)) (quotations omitted). Indeed, while delay may be a relevant factor in determining whether an insurer has acted in bad faith, "if delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred." *Kosierowski*, 51 F. Supp. 2d at 589; *see also Quaciari*, 998 F. Supp. at 582–83 (granting summary judgment for insurer and concluding that "even if all delay were attributable to [the insurer], it would not, without more, be sufficient to establish bad faith").

Akin to Plaintiffs' response to Westfield's Motion for Summary Judgment on Plaintiffs' breach of contract claim, Plaintiffs further allege that Westfield's refusal to pay for the tarp because of its price and DRS's "ruin[ing]" of Plaintiffs' roof in 2013 demonstrate that Westfield acted in bad faith. However, as this Court discussed above, these assertions stray far afield from the allegations set forth in Count II of Plaintiffs' Amended Complaint, remain unsupported by any relevant citation to pertinent policy language, case law or statutory law, and are distinctly contrary to the record.

Considering Plaintiffs' heightened evidentiary burden, Plaintiffs have failed to adduce sufficient evidence from which a reasonable jury could find by clear and convincing evidence that Westfield lacked a reasonable basis for its handling of Plaintiffs' claim. Because this Court

concludes that Plaintiffs have not sufficiently demonstrated the first prong of the *Babayan* test, this Court need not address the second prong, as both are required for a successful bad faith claim. Thus, summary judgment on Plaintiffs' claim of bad faith will be entered in Defendant's favor.

### III. CONCLUSION

Plaintiffs have advanced little legal authority and at best a scant and improperly supported factual record in opposition to Defendant's properly-supported Motion for Summary Judgment. By Plaintiffs' failure to controvert Defendant's Concise Statement of Material Facts, Plaintiffs have admitted these facts in their entirety. The Haydens waited nearly six (6) months to file their insurance claim, and gutted the third floor/attic/master bedroom and second floor bathroom and bedroom before any Westfield representative could inspect the Haydens' home for interior damage. In spite of an Order of this Court to do so, Plaintiffs failed to produce the photographic and documentary evidence that they say makes their case. Thus, Westfield's Motion for Summary Judgment is granted in its entirety, and Plaintiffs' Motion for Voluntary Dismissal is denied with prejudice. An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated: October 25, 2013

Cc:     All counsel of record